### DOW et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. October 10, 1927.

No. 4867.

Conspiracy ⟨key⟩47—Evidence held not to sustain conviction for conspiracy to violate National Prohibition Act (27 USCA).

Evidence *held* insufficient to sustain a conviction of defendants of conspiracy to violate the National Prohibition Act (27 USCA).

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

C. L. Dow and J. N. McWilliams were convicted of a conspiracy to violate the Na-

tional Prohibition Act, and they bring error. Reversed and remanded.

Wesley E. Lloyd, A. J. Croteau, and Lyle Henderson & Carnahan, all of Tacoma, Wash., and Vance & Christensen, of Olympia, Wash., for plaintiffs in error.

Thos. P. Revelle, U. S. Atty., of Seattle, Wash., and Bertil E. Johnson, Asst. U. S. Atty., of Tacoma, Wash. (Carroll A. Gordon, Asst. U. S. Atty., of Tacoma, Wash., on the brief), for the United States.

Before HUNT, RUDKIN and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. Dow and McWilliams were convicted of conspiracy to violate the provisions of the National Prohibition Act (27 USCA).

The allegations are that they conspired to possess, transport, sell, and barter intoxicating liquors; that it was their purpose to maintain a common nuisance at a farm occupied by Dow by keeping, selling, transporting, and bartering intoxicating liquors; that the conspiracy was a continuing one from a date prior to December 17, 1925, up to and including December 17, 1925. As overt acts, it is charged that Dow and McWilliams, with others, at the Dow farm, conducted and maintained a common nuisance by keeping and selling intoxicating liquors, and that at the Dow farm they possessed 180 bottles of intoxicating liquor; that Dow possessed and concealed at his farm certain intoxicating liquor in order that it might be removed by McWilliams to be sold or disposed of elsewhere; that on December 17, 1925, McWilliams went to the Dow farm for the purpose of unlawfully transporting some of the intoxicating liquor with intent to sell or dispose of it.

The only question presented is whether there was sufficient evidence to sustain the conviction.

The case is as follows: In the afternoon of the 18th of December, 1925, four men, government employees, went to Dow's farm. They had a search warrant which was served upon Dow, who was sick in bed. Dow told the officers to go ahead and search. They did, and in a feedhouse near Dow's dwelling found 60 bottles of liquor in 16 sacks. Some of the sacks appeared to have been opened and part of the contents removed. Liquor was also found in some sacks in a building a short distance from the place where the first lot was found. These sacks had dust upon them, as though they had been there some time. The officers moved the 16 sacks,

but did not put them back in exactly the positions in which they found them. The officers remained on the premises, and about dark McWilliams drove in an automobile to the Dow place, and, as he approached the building where the 16 sacks had been found, turned off his lights, got out of his car, opened the rear door on the left side, and went into the building. He turned on a flash light, and, going to where the liquor was, stooped over and appeared to be picking up something, but then left the building without taking anything. He then went to the barn where Mrs. Dow was milking a cow, and while talking with her was put under arrest. There was testimony that when McWilliams was arrested he asked, "Is there no way to fix this up?" to which the prohibition agent replied, "Not a chance in the world;" that he then asked if he could telephone to his wife; that the agent told him he could not, and that they would have to stay all night where they were; that McWilliams protested, whereupon the agent said they would have to stay until "the other bootleggers come"; that McWilliams replied, "There are no others; I am the only one;" that McWilliams denied that he owned the liquor found on the premises.

Dow testified that he was a dairy farmer, and that when the officers called he told them to make the search; that later one of them came back and reported he had found some liquor in the chicken house. Dow also testified that he never had any liquor there himself, and did not know that there was any on the premises; that he did not know McWilliams well, and had not seen him since some time in November, when McWilliams wanted him to join him in a fishing trip. He denied that there was any arrangement with McWilliams or any other person to store liquor on his farm. McWilliams testified that he knew the liquor was on Dow's place on the 18th of December; that he heard of it that day, but did not think it belonged to Dow; that toward evening he went to Dow's place for the purpose of getting some of the whisky; that Dow did not know of his pur-

21 F.(2d)—52

pose; that he turned off the lights of his automobile because he did not want any one to see him go into the place; that he did not want to meet any of the Dow family; that as he went toward the barn he heard a noise and was frightened; that he met Mrs. Dow and learned from her that Dow was in the house sick in bed; that as he turned to go to the house the officer arrested him; that he did not wish his wife to worry because of his absence, and that, when he asked the officer if there was no way to fix the matter up, he meant to inquire if there was no way by which he could let his wife know that he would not be home for some time; that he had no idea of bribing the officer; that he never talked with Dow about putting liquor on his place; and that he never connived with Dow or had his consent to put liquor there.

A prohibition agent was recalled to testify that, on the day of Dow's arrest, Dow stated that a man named Marinoff had approached him with reference to making an arrangement to deposit liquor on his (Dow's) place, but that he had refused to allow him to do so.

We conclude that the court should have directed an acquittal. The evidence failed to disclose close association of the defendants prior to McWilliams' visit to the Dow farm, or that there was any combination or arrangement of any kind entered into between defendants before the time of their arrest by which they were to store or possess or sell liquor, or that McWilliams' visit was in furtherance of any such combination. It is perfectly clear that when McWilliams went to Dow's place he was intending to violate the prohibition law, and it may be that Dow was aware that the liquor was in the buildings on his premises and was unlawfully in possession of the liquor discovered. But, in the absence of evidence to warrant the inference that there was a common purpose, as charged, between the two men, and that McWilliams was executing the purpose, there could be no verdict of guilt of conspiracy.

The judgment is reversed, and the cause is remanded for a new trial.